| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br>1437 Bannock Street, Room 256<br>Denver, Colorado 80202 | DATE FILED: December 14, 2016 1:39 PM<br>FILING ID: 5B0B9DE981787<br>CASE NUMBER: 2016CV34586 |
| **ZACHARY McFARLAND**<br><br>**Plaintiffs**<br><br>v.<br><br>**STATE FARM FIRE & CASUALTY CO.**<br><br>**Defendants** | ▲ **COURT USE ONLY**<br><br>Case No.:<br><br>Division: |
| Attorney for Plaintiff:<br><br>Michael S. Porter, No. 11480<br>**THE LAW FIRM OF MICHAEL S. PORTER**<br>4465 Kipling St., Suite 200<br>Wheat Ridge, Colorado 80033<br>tel 303.940.8370<br>fax 303.421.4309<br>email: porterlaw@comcast.net | |
| **CLASS ACTION COMPLAINT AND JURY DEMAND** ||

COMES NOW the Plaintiff Zachary McFarland, on his own behalf and on behalf of all others similarly situated, and for his Complaint states:

### PARTIES AND VENUE

1. Plaintiff Zachary McFarland is a natural person who resides in Jefferson County, Colorado. Defendant is a foreign corporation transacting business, issuing insurance policies, and insuring property in all Colorado counties, specifically including Denver County, Colorado at all relevant times herein. Defendant also is present in and may be served in Denver County, Colorado.

2. Venue is therefore proper in Denver County, Colorado pursuant to C.R.C.P. 98(c) and C.R.S. § 6-1-103.

### GENERAL ALLEGATIONS

3. No individual Plaintiff or class member has a claim equal to or exceeding $75,000.00, inclusive of costs and attorneys' fees. The total damages of the Plaintiff and Class does not exceed $5,000,000.

EXHIBIT 1

4. Plaintiff entered into a contract of insurance with the Defendant that insured his residence against physical damage. The insurance contract was issued as Policy No. 06-G7-2306-3 and was in effect when the subject loss was incurred.

5. A hailstorm damaged Plaintiff's home on or about July 7, 2014. The damages to Plaintiff's home constituted a covered loss under the subject insurance policy. The Plaintiff timely submitted a claim that was accepted as a covered, proper claim.

6. Plaintiff's claim was adjusted by the Defendant's claims adjusting service on or about August 12, 2014 and the roof was deemed a covered loss. This adjustment depreciated the labor that was necessary to repair or replace multiple items. A total of $2,517.26 was depreciated, a large portion of which included depreciation of labor. After application of the deductible to Plaintiff's actual cash value ("ACV") adjustment of $8,161.79 the net value of Plaintiff's claim per State Farm's adjustment was $6,885.79.

7. Much of the depreciation assessed did not specify whether labor was included. Plaintiff's best information and belief is that labor was depreciated to repair or replace:

   a. shingles,

   b. roofing felt,

   c. roof vents,

   d. counter flashing,

   e. rain cap,

   f. priming and painting roof vents,

   g. stain on a deck's handrail,

   h. paint on a porch column,

   i. window screens,

   j. vent cap.

8. Plaintiff received an initial ACV payment of $6,003.09 on or about August 12, 2014. On July 20, 2015 Defendant paid Plaintiff another $882.70 for partial ACV payment. Plaintiff contracted for and accomplished roof repairs.

9. On or about October 20, 2015 Defendant issued an RCV payment of $3,389.72. To date, Plaintiff has received a total amount of $10,275.55 from the Defendant for the damages to his home. Plaintiff did not complete all of the repairs and never received a replacement cost value ("RCV") payment for multiple items that were adjusted, including sealing and painting wood siding; painting the column; staining the deck handrail; and replacing the vent termination cap.

EXHIBIT 1

## POLICY TERMS AND SETTLEMENT PRACTICES OF THE DEFENDANTS

10. The Defendant's insurance policies issued to Plaintiff and other members of the proposed class provide RCV coverage for total loss of and partial loss to covered dwellings and other structures.

11. At all times relevant, Defendant paid partial losses under ACV policies an initial payment equivalent to the ACV of the claim. At all times relevant, the subject insurance policies did not define "actual cash value."

12. At all times relevant, Defendant's practice has been to pay their insureds the ACV portion of the claim by deducting depreciation and any applicable deductible. The policy does not define "depreciation" or any derivative of "depreciate."

13. At all times relevant, Defendant separately itemized the labor component of each item of loss. The labor is then added to material costs of the item of loss and the resulting aggregated or "unitized" item is depreciated. This "unitized" number is then provided to the insured without disclosure that labor is valued or depreciated.

14. In order to obtain an additional payment representing the depreciation that was held back, and thereby recover the full RCV of the covered loss, the insured party must repair, rebuild or replace the damaged property within a specified time frame and submit proof to Defendant that the repair or replacement was completed. Costs that exceed the amount of the ACV payment are the responsibility of the policy holder.

15. In the context of insurance law, "depreciation" is defined as "[a] decline in an assets' value because of use, wear, obsolescence, or age." BLACK'S LAW DICTIONARY, 506 (9th ed. 2009) (emphasis added). Materials used to repair or replace damaged property (e.g., sheathing, base boards, fascia, etc.) diminish in value over time due to use, wear, obsolescence, as such, these are assets that can be depreciated. In contrast, labor is not susceptible to aging or wear. Labor's value does not diminish over time. Conceptually and practically, depreciation simply cannot be applied to labor costs.

16. In order to recover the RCV of their covered losses, Plaintiff and all other class members are required to pay out of pocket the difference between the cost of materials and labor necessary to repair or replace the damaged property, and the depreciated ACV payment they received from Defendants. Defendants failure to pay the full costs of the labor necessary to repair or replace Plaintiff's and other class members' damaged property in the ACV payment left Plaintiff and the other class members under-indemnified and under paid for their losses.

## CLASS ALLEGATIONS

17. Plaintiff brings this lawsuit on behalf of himself and all others similarly situated. This case satisfies the C.R.C.P. 23(a) requirements of numerosity, commonality, typicality and adequacy of representation, and C.R.C.P 23(b) requirements of predominance and superiority.

18. Plaintiff seeks to represent a class defined as follows:

EXHIBIT 1

All persons and entities that received "ACV" payments, directly or indirectly, from State Farm Fire & Casualty Co. for loss or damage to a dwelling or other structure located in the state of Colorado, such payments arising from events that occurred at a minimum within the twelve (12) years preceding the date of filing of the class action complaint, where the cost of labor was depreciated. Excluded from the class are:

1. All persons and entities that received payment from Defendants in the full amount of insurance on the declarations page;

2. Defendants and their affiliates, officers and directors;

3. Members of the judiciary and their staff to whom this action is assigned; and

4. Plaintiffs' counsel and staff.

19. The members of the class are so numerous that individual joinder is impractical. Plaintiff reasonably believes that hundreds, and more likely thousands of people across Colorado have been damaged by Defendant's actions. The names and addresses of the members of the class are identified in records maintained by the Defendant and class members may be notified of the pendency of this action by mailed, published and/or electronic notice.

20. Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual Class Members. The questions of law and fact common to the Class include, but are not limited to:

   a. Whether Defendant's insurance policies allow Defendant to depreciate labor in calculating ACV payments for covered losses;

   b. Whether Defendant's insurance policies are ambiguous concerning the depreciation of labor costs in calculating ACV payments, and if so, how Defendant's insurance policies should be interpreted;

   c. Whether Defendant's depreciation of labor costs in making ACV payments for covered losses is a breach of the insurance contracts issued by Defendant to Plaintiffs and other Class Members;

   d. Whether Plaintiff and other Class Members have been damaged by Defendant's breaches, as alleged herein, and if so:

      1. What is the nature and extent of those damages; and

      2. What relief should be awarded to Plaintiff and other Class Members; and

  e.  Whether Defendant has been unjustly enriched by retaining money that should have been paid to Plaintiff and other Class Members;

  f.  Whether Defendant has violated the Colorado Consumer Protection Act, C.R.S. § 6-1-105 et seq; and

  g.  Whether Defendant's depreciation of labor, resulting in unlawfully lower ACV payments, constituted an unreasonable delay or denial of benefits under C.R.S. § 10-3-1115 and 1116.

21. Plaintiff's claims are typical of the claims of all Class Members, as they are all similarly affected by Defendant's custom and practice of unlawful and unjust conduct and their claims are based on such conduct. Further, Plaintiff's claims are typical of the claims of all Class Members because their claims arise from the same underlying facts and are based on the same factual and legal theories. Plaintiff is no different in any material respect from any other members of the Class.

22. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the Class. Plaintiff's interests do not conflict with the interests of the Class they seek to represent. Plaintiff has retained counsel who are competent and experienced in class action litigation, including insurance-related cases. Plaintiff and his counsel will prosecute this action vigorously.

23. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all Class Members in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most Class Members, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if Class Members had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Moreover individual litigation could result in inconsistent adjudications of common issues of law and fact.

24. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiffs and Class Members. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

25. Class certification is further warranted because Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

EXHIBIT 1

## FRAUDULENT CONCEALMENT

26. At all times relevant to the allegations set forth herein, Defendant owed a fiduciary duty to, and/or had a special relationship with, Plaintiff and other Class Members.

27. Plaintiff and the other Class Members purchased insurance from Defendant in order to be indemnified for damages caused by covered perils.

28. Defendant values the covered losses by calculating the cost of repairing or replacing the damaged property. Defendants then make an initial payment to their insureds in the amount of the ACV of the covered loss, net of any applicable deductible. Plaintiffs and the Class Members cannot recover the RCV of a covered loss, and therefore cannot be fully indemnified, until they repair the damage or replace the damaged portion of their property. By depreciating the labor component of the initial ACV payment, Defendant is able to delay, and in many cases completely avoid, paying the RCV of the claim. Defendant is able to retain and use the holdback funds until the insured fully repairs or replaces the damage. Defendant has a pecuniary interest in keeping the initial ACV payment as low as possible, knowing that it will be able to use the holdback for a period of time, and may not have to pay it at all. By withholding the depreciated labor component of the initial ACV payment, Defendant places their pecuniary interest above their duty to indemnify their insureds.

29. Throughout the claims process, Plaintiffs and other Class Members asked Defendant to pay them what they were entitled to receive as the ACV of their covered losses under the terms of their insurance policies. Defendant represented to Plaintiff and other Class Members that their ACV payments were the full amount owed under their policies. However, Defendant knew that the initial ACV payments were not the full amounts owed because labor costs had been depreciated. Defendant represented that the initial ACV payments were the full amounts owed with the intent of having the insureds rely on those representations and accept the initial ACV payment.

30. Plaintiffs and other Class Members justifiably and reasonably relied upon Defendant's representations that they had received all they were entitled to recover as ACV payments from Defendant under the terms of their policies.

31. Defendant had a duty to disclose to Plaintiffs and other Class Members that they were depreciating labor costs in their initial ACV payments. Defendant not only failed to disclose this information, it acted in a manner designed to conceal it from Plaintiff and other Class Members. More specifically, Defendant generated and produced documents to Plaintiff and other Class Members concerning their claims in which they failed to disclose the fact that they depreciated labor costs in calculating ACV. In addition, Defendant concealed both the fact and amount of such depreciation by combining the labor and materials components of depreciation into a single sum identified simply as "depreciation" in its adjusters' loss reports. This practice was peculiarly within the knowledge of Defendant. Plaintiffs and other Class Members could not have known they had been underpaid on their claims through the exercise of reasonable diligence.

32. The elements of fraudulent concealment in Colorado are: (1) the concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance

EXHIBIT 1

of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages. First Interstate Bank of Fort Collins, N.A. v. Piper Aircraft Corp., 744 P.2d 1197, (Colo.1987). Defendant's actions in concealing the depreciation of labor satisfies these elements and tolls the running of any statute of limitations that may otherwise be applicable to the claims for relief asserted herein.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

Plaintiff readopts and realleges all foregoing allegations and further states:

33. Defendant materially breached its duty to indemnify Plaintiff and other class members by depreciating labor costs associated with repairs to their property in the ACV thereby paying Plaintiff and other class members less than what they were entitled to receive under the terms of the insurance contracts.

34. Defendant entered into policies of insurance with Plaintiff and other members of the proposed Class. These policies govern the relationship between Defendant, Plaintiff and other Class Members, as well as the manner in which claims for covered losses are handled.

35. The insurance policies at issue were drafted by Defendant and is essentially identical in all respects material to this litigation.

36. Plaintiff and other Class Members complied with all material provisions and fulfilled their respective duties with regard to their policies.

37. The policies of insurance Defendant issued to Plaintiff and other members of the proposed Class state that in the event of a partial loss, Defendant may fulfill its initial contractual obligation to an insured party by paying the ACV of the loss. At all times relevant hereto, Defendant has made such payments based upon Defendant's calculation of the ACV for the partial loss, net of any applicable deductible.

38. In making the ACV payment, Defendant breached its contractual duty to pay Plaintiff and other Class Members the amount owed to them by depreciating labor costs.

39. Defendant's actions in breaching their contractual obligations to Plaintiff and other Class Members benefitted, and continue to benefit, Defendant. Likewise, Defendant's actions damaged, and continue to damage, Plaintiff and other Class Members.

40. Defendant's breach of its contractual obligations to Plaintiff and other Class Members benefitted, and continues to benefit, Defendant. Likewise, Defendant's actions damaged, and continue to damage, Plaintiff and other Class Members.

41. Defendant's actions in breaching their contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiff and other Class Members.

EXHIBIT 1

42.     In light of the foregoing, Plaintiff and other Class Members are entitled to recover damages sufficient to make them whole for all amounts Defendants unlawfully withheld from their ACV payments as labor cost depreciation.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment)

Plaintiff readopts and realleges all foregoing allegations and further states:

43.     Defendant's conduct as described above, and as more specifically alleged in this Count, also constitutes unjust enrichment, for which Plaintiff and other Class Members are entitled to pursue equitable remedies in accordance with Arkansas law.

44.     Defendant made payments to Plaintiffs and other Class Members for covered losses to their property which ostensibly represented the ACV of their claims, net of deductibles. However, in calculating the ACV of such claims, Defendant wrongfully depreciated labor costs. As a result, the payments Plaintiff and other Class Members received were less than the true ACV of their claims.

45.     Defendant's actions were unjust and inequitable in that they paid Plaintiffs and other Class Members less than they were entitled to receive for their claims.

46.     Defendant's actions were unjust and inequitable in that Defendants failed to disclose to Plaintiffs and other Class Members that they were receiving less than the true ACV of their claims.

47.     Defendant's actions were unjust and inequitable in that Defendants concealed from Plaintiffs and other Class Members that they were receiving less than the true ACV of their claims.

48.     Defendant's actions were unjust and inequitable in that Defendants owed a fiduciary duty to, and/or had a special relationship with, Plaintiffs and other Class Members.

49.     As a result of their unjust and inequitable actions, Defendant was unjustly enriched by receiving something of value they were not entitled to. More specifically, Defendant retained, and had the beneficial use of, money that Plaintiff and other Class Members were entitled to and should have received in payment of their claims.

50.     As a result of their unjust and inequitable actions, Defendant was unjustly enriched by receiving money under such circumstances that, in equity and good conscience, they should not retain.

51.     In light of the foregoing, Plaintiff and other Class Members are entitled to restitution and other equitable relief.

## THIRD CAUSE OF ACTION
### (Colorado Consumer Protection Act)

Plaintiff readopts and realleges all foregoing allegations and further states:

EXHIBIT 1

52. Defendant engaged in an unfair or deceptive trade practice by failing to disclose material facts to Plaintiff regarding the coverage provided and benefits paid in violation of C.R.S. § 6-1-105 (e), (g), (l), and (u).

53. Defendant engaged in the foregoing unfair or deceptive trade practice in the course of its business.

54. Defendant's conduct significantly impacted the public as actual or potential consumers of Defendant's goods, services, and/or property.

55. Plaintiff suffered injury in fact to a legally protected interest.

56. The actions of the Plaintiff and members of the class might have been different if accurate material facts had been disclosed to them.

57. As a result of Defendant's unfair or deceptive trade practice, Plaintiff and the class members have suffered damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### (C.R.S. §§ 10-3-1115 and 1116)

Plaintiff readopts and realleges all foregoing allegations and further states:

58. Defendant's conduct as set out above violates C.R.S. § 10-3-1115, in that Defendant unreasonably delayed and/or denied payment of benefits.

59. As a result, Plaintiff and the class members are entitled to recover two times the amount of covered benefit, plus attorney's fees.

**WHEREFORE**, Plaintiff and the class members respectfully request that this Court:

A. Find in favor of Plaintiff and the class members and against Defendant on each of the claims for relief set forth herein;

B. Award Plaintiff and the class members compensatory damages, punitive damages, and attorney fees, interest, and costs as permitted by law; and

C. Take any other action the Court deems to be just and proper.

### JURY DEMAND

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

9

EXHIBIT 1

Dated this 14th day of December, 2016.

**THE LAW FIRM OF MICHAEL S. PORTER**

*This pleading is filed electronically pursuant to C.R.C.P. 121 1-26. The original signed pleading is in counsel's file.*

By: ___/s/ Michael S. Porter_____
Michael S. Porter, #11480
**ATTORNEY FOR PLAINTIFFS**

**Plaintiff's Address:**
13744 W. 84th Ave.
Arvada, CO 80005

10

**EXHIBIT 1**